# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# ABERDEEN DIVISION

NICOLE MABRY, as Mother and
Next Friend of T.M., a Minor                                                          PLAINTIFF

V.                                                    CIVIL ACTION NO. 1:13-CV-00214-SA-SAA

LEE COUNTY, et al.                                                                    DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Nicole Mabry initiated this action on behalf of her minor daughter T.M., against Lee County, Mississippi and the City of Tupelo, Mississippi, as well as Kristy Luse, Jon Bramble, and Tasha Fant, named in their individual capacities. Plaintiff alleges various constitutional violations arising out of T.M.'s arrest and strip search following a physical altercation between her and another student at Tupelo Middle School. The individual Defendants have filed Motions to Dismiss for Qualified Immunity [38, 42, 44]. Upon consideration of the motions, responses, rules, and authorities, the Court finds as follows:

Factual and Procedural History

In 2010, T.M. was a student at Tupelo Middle School, where she was a member of the marching band. One school day in November of that year, near the end of band class, T.M. became involved in a verbal quarrel with two other female band students, M.S. and Q.W. T.M. explained that after the bell signaling the end of class, she was one of the first students to leave the band hall in an effort to avoid further altercation. The other two girls allegedly followed her, and then one of the two purportedly pulled T.M.'s hair from behind. T.M. responded by pulling Q.W.'s hair, and a fight ensued between T.M. and Q.W., resulting in both girls sustaining

varying degrees of injuries. After the fight had been broken up, T.M. was helped into a classroom and then to the school nurse's office. M.S. and Q.W. proceeded to their next class.

The Principal at Tupelo Middle School, Kristy Luse, conducted an investigation into the altercation. She collected statements from students who witnessed the event, and she reviewed a video of the fight. Because of the limited range of the security camera in the hall, the video failed to display the beginning of the altercation, and thus it was unclear from the footage who initiated the fight. Luse testified that, after her initial review of the statements and video, she suspected that a crime may have been committed and requested the assistance of Jon Bramble, a City of Tupelo police officer stationed at Tupelo High School.

After arriving and viewing the video, Officer Bramble determined that there was probable cause to arrest both T.M. and Q.W. and sought authorization from the Judge Designee at the Lee County Youth Court to arrest and transport the girls to the Lee County Juvenile Detention Center ("LCJDC"). Based on Officer Bramble's description of the video, the Judge Designee determined that probable cause existed and granted verbal authorization. Officer Bramble then arrested T.M. and Q.W. and drove them to the LCJDC.

As part of the intake procedures upon arrival at the facility, Tasha Fant, a corrections officer stationed at LCJDC, searched T.M. with a metal detecting wand, performed a pat down, and conducted a private strip search to ensure T.M. did not possess contraband.[1] At some point after the search, T.M. was directed to a common area with other juvenile detainees, where she remained until being released from the LCJDC that evening.

All charges against T.M. were eventually dismissed, and Mabry initiated this lawsuit on T.M.'s behalf. Relevant to the pending motions, Plaintiff brings claims through Section 1983 and under the Fourth Amendment of false arrest against Luse and Officer Bramble and unreasonable

---

[1] Q.W. was presumably also subjected to these intake procedures, although it is not entirely clear from the record.

search against Officer Fant. Defendants each assert qualified immunity. The Court addresses each claim in turn.

## Summary Judgment Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

Discussion and Analysis

*Section 1983 Liability and Qualified Immunity*

Section 1983 imposes liability upon any person who, acting under color of state law, deprives another of federally protected rights. 42 U.S.C. § 1983. It is axiomatic "that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws." Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F.3d 872, 879 (5th Cir. 2004). To recover under Section 1983, a plaintiff must identify a deprivation of a right secured by federal law and must "demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law." Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 153 F.3d 211, 215 (5th Cir. 1988) (quoting Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994)) (alteration in original).

As a defense to Section 1983 claims, "[t]he doctrine of qualified immunity shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Luna v. Mullenix, 773 F.3d 712, 718 (5th Cir. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)) (alteration in original). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). Importantly, qualified immunity functions as "immunity from suit rather than a mere defense to liability[.]" Pearson v. Callahan, 555 U.S. 223, 232, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quotation and citation omitted). Once

asserted by a government official, it is the plaintiff's burden to prove that the official is not entitled to qualified immunity. Michalik v. Hermann, 422 F.3d 252, 258 (5th Cir. 2005).

In order to overcome a claim of qualified immunity, a plaintiff is required to demonstrate "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, --- U.S. ---, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing Harlow, 457 U.S. at 818, 102 S. Ct. 2727). The Court may address these issues in any order according to its sound discretion in light of the circumstances of the case at hand. Pearson, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).

### False Arrest Claims

In pursuit of her Section 1983 claims against Luse and Officer Bramble, Plaintiff asserts that T.M. was falsely arrested. The Fourth Amendment to the United States Constitution provides that citizens have the right to be free from arrests made without probable cause.[2] Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994). Thus, to establish that the arrest violated T.M.'s Fourth Amendment rights, Plaintiff must demonstrate that there was no probable cause to support her arrest. Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004). Probable cause exists "when the totality of the facts and circumstances within [an official's] knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had

---

[2] In considering similar claims of false arrest brought by a student against a school, its principal, and two of its assistant principals, the Southern District of Mississippi noted that "[t]here is a strong argument that probable cause is not required" for seizures initiated by school officials. C.H., II v. Rankin Cnty. Sch. Dist., 2010 WL 1541471, at *2 (S.D. Miss. Apr. 16, 2010) aff'd, 415 F. App'x 541 (5th Cir. 2011) (citing Couture v. Bd. of Educ. of Albuquerque Pub. Sch., 535 F.3d 1243, 1250 (10th Cir. 2008)). Thus, whether Luse, a school principal, should be held to the same Fourth Amendment standard as Officer Bramble, a police officer, is not entirely clear. However, like in C.H. II, "the Court need not resolve this dispute" because the Court finds no false arrest "even under the more stringent probable cause standard . . . ." Id.

committed or was committing an offense." Id. (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001)).

T.M. was arrested and charged as a juvenile with the delinquent act[3] of simple assault.[4] Simple assault is committed in Mississippi when an individual "attempts to cause or purposely, knowingly or recklessly causes bodily injury to another . . . ." MISS. CODE ANN. § 97-3-7.

Officer Bramble and Luse argue that the security footage displaying the fight between T.M. and Q.W., which they both viewed prior to T.M.'s arrest, was alone sufficient to establish probable cause to arrest T.M. for simple assault. Plaintiff, however, stresses the fact that the recording failed to capture the beginning of the altercation. Still, the video does show that, after the fight had begun, both T.M. and Q.W. struck each other repeatedly. Neither party attempted to retreat or to remove herself from the altercation until others pulled the two girls away from each other. And before she was arrested, T.M. confirmed her involvement in the fight to Luse in a written statement and to Officer Bramble in a conversation in Luse's office.

Plaintiff argues that, notwithstanding the video evidence, the witness statements collected by Luse would have demonstrated that T.M. acted in self-defense. She maintains that Luse should have presented these statements to Officer Bramble or that he should have requested to see them. Plaintiff further argues that Officer Bramble should have considered the statements and explained their contents to the Judge Designee when seeking authorization for T.M.'s arrest.

---

[3] A delinquent act is defined by the Mississippi Code as "any act, which if committed by an adult, is designated as a crime . . . other than offenses punishable by life imprisonment or death." MISS. CODE ANN. § 43-21-105(j).

[4] The official charging document was not produced, but the Judge Designee testified that T.M. was charged with "simple assault, disorderly conduct, and disruption of a school session," and Officer Fant testified that T.M. was charged with simple assault. Because probable cause with regard to one delinquent act would be a sufficient basis for T.M.'s arrest, see MISS. CODE. ANN. § 43-21-101 *et seq.*, the Court will evaluate her claim of false arrest with regard only to simple assault, the offense corroborated by the testimony of both the Judge Designee and Officer Fant.

The Fifth Circuit has expressly declined to address whether evidence of an affirmative defense such as self-defense is relevant to a determination of probable cause. Piazza v. Mayne, 217 F.3d 239, 246-47 (5th Cir. 2000); see also United States v. Craig, 381 F. App'x 459, 461 (5th Cir. 2010) ("The parties disagree as to whether an arresting officer making a probable cause determination must consider facts establishing an affirmative defense. We need not resolve this dispute.").[5] District courts within the Fifth Circuit, as well as other Circuits that have considered this issue have held that an affirmative defense is relevant to the probable cause inquiry, but that an official is under no duty to investigate a plaintiff's claimed defense. Dressner v. Crowe, 2013 WL 5236658, at *3 (E.D. La. Sept. 16, 2013), appeal dismissed, 564 F. App'x 86, 87 (5th Cir. 2014); Thomas v. City of Galveston, Tex., 800 F. Supp. 2d 826, 835 (S.D. Tex. 2011) (collecting cases). In other words, "[a] police officer may not ignore conclusively established evidence of the existence of an affirmative defense, but the officer has no duty to investigate the validity of any defense." Thomas, 800 F. Supp. 2d at 835 (quoting Hodgkins ex rel. Hodgkins v. Peterson, 355 F.3d 1048, 1061 (7th Cir. 2004)).

Here, of the five witnesses who provided statements to Luse (including T.M. and Q.W.), two alleged that the person initiating the fight was Q.W., two contended that it was T.M., and one asserted that it was M.S. Therefore, Luse was presented with varying versions of how the fight began, three that may have lent support to T.M.'s claim of self-defense, and two that would have directly contradicted such a claim. Additionally, Officer Bramble testified that he could not remember whether he viewed the witnesses' statements before making his probable cause determination, and he was under no duty to do so. See id. Had Officer Bramble consulted the

---

[5] The district court in Piazza held that the existence of an affirmative defense did not bear on the probable cause determination, but the Fifth Circuit declined to adopt this "broad holding." 217 F.3d at 244, 247. The district court in Craig did not address the issue. See United States v. Craig, 4:08-CR-00057-Y (N.D. Tex. Jan. 22, 2009) (Order Den. Mot. Suppress).

statements, he, like Luse, would have been presented with conflicting accounts on the issue of T.M.'s purported self-defense. Thus, the Court finds that the alleged failure to consider the witness statements or convey their contents to the Judge Designee does not demonstrate that probable cause was lacking.

The Court determines that the recording of the altercation, along with T.M.'s confirmation that she participated in the fight, afforded Luse and Officer Bramble reasonable grounds to believe T.M. had purposely, knowingly, or recklessly caused or attempted to cause injury to Q.W., and thus provided probable cause for T.M.'s arrest on the basis of simple assault. Accordingly, Luse and Officer Bramble are both entitled to qualified immunity with regard to T.M.'s false arrest claims.

### Unreasonable Search

Plaintiff next claims that by subjecting T.M. to a strip search, Officer Fant violated T.M.'s Fourth Amendment right to be free from unreasonable searches. See U.S. CONST. amend. IV. Officer Fant admitted in her deposition that, after searching T.M. with a metal wand and after patting her down, she no longer suspected that T.M. possessed contraband, but that she nonetheless performed the strip search pursuant to an LCJDC policy that requires its officers to strip search all juveniles who are charged with a delinquent act involving violence, theft, or drugs. In other words, Officer Fant admits that she subjected T.M. to a suspicionless strip search. In briefing this issue, the parties have focused on whether clearly established law prohibited such a suspicionless search. Therefore, the Court will, as Pearson allows, tailor its discussion to the second prong of the qualified immunity analysis. See 555 U.S. at 236, 129 S. Ct. 808.

For a constitutional right to be clearly established, it "must be sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right." Reichle v.

8

Howards, --- U.S. ---, 132 S. Ct. 2088, 2093, 182 L. Ed. 2d 985 (2012) (internal quotations omitted). The inquiry focuses on "whether the officer had fair notice that her conduct was unlawful[.]" Luna, 773 F.3d at 724 (quoting Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)). Thus, "reasonableness is judged against the backdrop of the law at the time of the conduct." Id. In determining the state of the law, the Court looks primarily to Fifth Circuit and Supreme Court cases, but in the absence of controlling precedent, may consult opinions from other Circuits. McClendon v. City of Columbia, 305 F.3d 314, 329 (5th Cir. 2002) (en banc) (citations omitted). Importantly, while there may be "notable factual distinctions between the precedents relied on and the cases then before the Court," the law can be clearly established "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." Id. (quoting Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004)).

The starting point for determining the constitutionality of strip searches is the Supreme Court case of Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Court in Bell considered a policy permitting body cavity searches of prisoners who failed to make bond, even when there was no probable cause to believe the inmate was concealing contraband. Id. at 559-60, 99 S. Ct. 1861. The Court upheld the policy as constitutional, explaining:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 560, 99 S. Ct. 1861 (citations omitted).[6]

Subsequently, the Fifth Circuit invalidated as unconstitutional a county's blanket policy permitting strip searches of all arrestees, regardless of the severity of the offense and even in the absence of reasonable suspicion of contraband. Stewart v. Lubbock Cnty., Tex., 767 F.2d 153, 155 (5th Cir. 1985). In applying the balancing test from Bell, the Fifth Circuit explained that policies of conducting suspicionless strip searches of those charged with only *minor* offenses violate the Fourth Amendment. Id. at 156.

In 1996, the Fifth Circuit held that a jail official was not entitled to qualified immunity for performing a suspicionless strip search of a plaintiff who was arrested for minor traffic violations. Kelly v. Foti, 77 F.3d 819, 821 (5th Cir. 1996). In so holding, the Court reaffirmed that "[j]ail officials may strip search a person arrested for a minor offense and detained pending the posting of bond only if they possess a reasonable suspicion that he is hiding weapons or contraband." Id. (citing Stewart, 767 F.2d at 155). Moreover, the Court explained that reasonable suspicion must relate to the specific individual, not a category of offenders. Id. at 822.

As stated above, it is uncontested that Officer Fant had no suspicion that T.M. may possess contraband. It is likewise uncontested that the misdemeanor of simple assault is considered a minor offense. See Jimenez v. Wood Cnty, Tex., 660 F.3d 841, 848 (5th Cir. 2011) (holding that a misdemeanor is a minor offense for Fourth Amendment analysis). Thus, Plaintiff argues that Stewart and Kelly clearly establish that Officer Fant violated the Fourth Amendment.

To demonstrate a lack of clarity in the law, Officer Fant cites the recent Supreme Court case Florence v. Board of Chosen Freeholders of Cnty. of Burlington, --- U.S. ---, 132 S. Ct.

---

[6] The Court did not address whether the severity of the offense for which the arrestee is detained may affect the outcome under this balancing test. Id., 99 S. Ct. 1861. The limited issue in Bell was "whether visual body-cavity inspections as contemplated by the [policy at issue could] *ever* be conducted on less than probable cause." Id. at 559, 99 S. Ct. 1861.

1510, 182 L. Ed. 2d 566 (2012). In Florence, the plaintiff was arrested under the authority of a mistakenly issued bench warrant for purportedly failing to pay a fine that had in fact been paid. Id. at 1514, 182 L. Ed. 2d 566. During his detention, the plaintiff was subjected to a suspicionless strip search before being placed in the general population of a county jail. Id., 182 L. Ed. 2d 566. Finding no constitutional violation, the Supreme Court held that officers may, upon prison intake, require arrestees who will be admitted to the prison's general population to "undergo a close visual inspection while undressed," even in the absence of reasonable suspicion, and even though the offense for which they are arrested may be only "minor." Id. at 1513, 1522-23, 182 L. Ed. 566. Following the Supreme Court's holding, the Southern District of Mississippi stated that "the Court's decision in Florence overruled Fifth Circuit precedent requiring reasonable suspicion of contraband and/or weapons for strip-searches of minor-offense arrestees." Wamble v. Cnty. of Jones, 2012 WL 2088820, at *13 (S.D. Miss. June 8, 2012).

Thus, Officer Fant contends that in light of Florence, the law as applied to the strip search of T.M. was not clearly established. Plaintiff, on the other hand, argues that because the strip search took place on November 12, 2010 and Florence was not handed down until April 2, 2012, the case has no bearing on the state of the law at the time of the conduct at issue. The Fifth Circuit has not addressed whether Florence may have some retroactive applicability.[7]

This Court, however, need not decide the issue because the "clearly established" inquiry in this case can be more easily resolved on different grounds. Fifth Circuit caselaw preceding

---

[7] The parties devote the majority of their briefing to an opinion in which the Sixth Circuit found that Florence demonstrated a lack of clarity with regard to its previous precedent (requiring reasonable suspicion to strip search minor-offense arrestees) notwithstanding the fact that Florence was decided subsequent to the official's conduct at issue. T.S. v. Doe, 742 F.3d 632, 639-40 (6th Cir. 2014). It explained that "[c]itation to Florence is, in large respect, a shorthand for a fundamental shift in the law that has taken place" since Bell was first decided and that by "2009, a reasonable official could have . . . concluded that" suspicion was no longer required for strip searches performed upon intake into a detention center. Id. More recently, however, the Fourth Circuit held that the Florence decision "does not demonstrate that the law on jail strip searches either was or was not clearly established" in 2008. West v. Murphy, 771 F.3d 209, 214 (4th Cir. 2014).

Florence involved searches of adult arrestees at adult jails, see Kelly, 77 F.3d at 821-22; Stewart, 767 F.2d at 153, whereas the present case involves a search of a juvenile at a juvenile detention center. Neither the Supreme Court nor the Fifth Circuit has ever addressed strip searches in the context of juvenile detention centers, see T.S., 742 F.3d at 640 (listing the Second and Eighth Circuits as the only courts to consider the issue).

The Circuits to consider this issue have afforded strip searches at juvenile detention centers less exacting constitutional scrutiny than those at adult facilities. The Second Circuit held that certain suspicionless strip searches of juveniles upon intake into a detention center were constitutional, even though the same searches would not have been constitutional under Second Circuit precedent had the arrestees been adults. N.G. v. Connecticut, 382 F.3d 225, 231-32, 237 (2d Cir. 2004). Similarly, the Eighth Circuit, which had previously held suspicionless strip searches of adult minor-offense arrestees to be unconstitutional, adopted the Second Circuit's reasoning and upheld a policy of partial strip searches of juveniles based on the state's responsibility to act *in loco parentis*. Smook v. Minnehaha Cnty., 457 F.3d 806, 812-13 (8th Cir. 2006).

In light of this precedent from other Circuits and the absence of directly controlling Fifth Circuit and Supreme Court caselaw addressing suspicionless strip searches in the context of juvenile detention centers, the Court finds that not every reasonable official would have concluded the strip search of T.M. to be an unreasonable search in violation of the Fourth Amendment. See Reichle, 132 S. Ct. at 2093, 182 L. Ed. 2d 985. Officer Fant is accordingly entitled to qualified immunity.

Conclusion

For the foregoing reasons, the Court finds that the individual officials' Motions for Qualified Immunity [38, 42, 44] are well taken and are GRANTED. T.M.'s arrest was supported by probable cause, and the subsequent strip search did not violate clearly established law. The claims against Luse, Officer Bramble, and Officer Fant are therefore dismissed. A separate order to that effect shall issue this day.

SO ORDERED, this 30th day of March, 2015.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**