IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NICOLE MABRY, as Mother and
Next Friend of T.M., a Minor                                                                    PLAINTIFF

V.                                                        CIVIL ACTION NO. 1:13-CV-00214-SA-SAA

LEE COUNTY, et al.                                                                             DEFENDANTS

MEMORANDUM OPINION

Plaintiff Nicole Mabry initiated this action on behalf of her minor daughter T.M., alleging various constitutional violations arising out of T.M.'s arrest and strip search following an incident at her middle school. She initially named as Defendants in their individual capacities Dr. Kristy Luse, Officer Jon Bramble, and Officer Tasha Fant, but the Court granted them dismissal on the basis of qualified immunity. Plaintiff's remaining claims are against government entities Lee County, the City of Tupelo, and Tupelo Public School District, which have all moved for summary judgment [97, 99, 106, 108]. The Court has considered the motions, responses, rules, and authorities, and finds as follows:

*Factual and Procedural Background*

In November 2010 at Tupelo Middle School, T.M., a twelve-year old girl, was involved in a fight with another female student, Q.W. Both girls sustained injuries. While T.M. was receiving treatment in the school nurse's office, Assistant Principal Dr. Kristy Luse investigated the altercation, determined that the fight likely involved criminal conduct, and summoned Jon Bramble, a City of Tupelo police officer stationed at Tupelo High School.

Officer Bramble reviewed a video of the fight, and decided that there was probable cause to arrest both T.M. and Q.W. Officer Bramble called the Lee County Youth Court Judge Designee David Anthony, seeking permission to transport both girls to the Lee County Juvenile

Detention Center. Anthony determined that probable cause existed, and issued a verbal custody order pursuant to Mississippi Code Section 43-21-301(3)(b). Officer Bramble then transported T.M. and Q.W. to the detention center.

As part of the intake procedures upon arrival at the facility, Tasha Fant, a female corrections officer, searched T.M. for contraband. She used a metal detecting wand, performed a pat down, and then conducted a private strip search.[1] Officer Fant testified that every juvenile charged with a delinquent act involving violence, theft, or drugs is strip-searched. Shortly after the search, T.M. was admitted to the detention center's general female population, where she remained until being released from detention that evening.

All charges against T.M. were eventually dismissed, and Plaintiff initiated this lawsuit on T.M.'s behalf. By previous Memorandum Opinion [70], the Court addressed Plaintiff's individual-capacity claims against Dr. Luse and Officer Bramble for Fourth Amendment false arrest, and against Officer Fant for Fourth Amendment unreasonable search. The Court found that Dr. Luse and Officer Bramble had probable cause to believe T.M. committed simple assault, and that Officer Fant's strip search did not violate clearly established law. Accordingly, qualified immunity shielded the individual officials from liability. The Court dismissed them from this lawsuit.

Now at issue are Plaintiff's remaining claims against Lee County, the City of Tupelo, and Tupelo Public School District. Plaintiff asserts that T.M.'s arrest violated her procedural due process rights stemming from a state-law created liberty interest under the Fourteenth Amendment, and that the strip search of T.M. constituted an unreasonable Fourth Amendment search.

---

[1] It appears from the record that Q.W. was also subject to these procedures.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

**Due Process Claims**

Plaintiff asserts that her procedural due process rights were violated by Defendants' policies of failing to follow state law regarding custody orders. Mississippi Code Section 43-21-

301 permitted the judge designee to authorize T.M.'s custody for up to forty-eight hours, so long as it appeared there was probable cause to believe that (a) T.M. was within youth court jurisdiction; (b) she was endangered, she was a danger to others, she was a flight risk, or a parent, guardian, or custodian was unavailable; and (c) no reasonable alternative to custody existed. The judge designee determined that there was probable cause to believe T.M. had committed a crime, which would have placed her within youth court jurisdiction. MISS. CODE ANN. §§ 43-21-105(i)-(j), 43-21-151(1). The judge designee deemed this finding alone to be sufficient, without regard to the two other preconditions to custody imposed by Section 43-21-301. Plaintiff argues that the failure to make the additional findings constituted a procedural due process violation.

To establish her procedural due process claims, Plaintiff must show (a) T.M. was deprived of a liberty interest within the meaning of the Fourteenth Amendment, and (b) the procedures relative to that deprivation were constitutionally inadequate. *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012). State law may serve as the source for the requisite liberty interest in some circumstances.[2] *Id.* In assessing the adequacy of the procedures, however, it is federal constitutional law that sets the standard. *Wansley v. Miss. Dep't of Corr.*, 769 F.3d 309, 312 (5th Cir. 2014) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). Thus, to succeed on her due process claims, Plaintiff must establish that Mississippi Code Section 43-21-301 created a liberty interest in her freedom from being arrested and detained; and that the process for making the custody determination was constitutionally deficient. *Wilson*, 667 F.3d at 601; *Wansley*, 769 F.3d at 312. The Court need not decide whether

---

[2] State law can create federal liberty interests "by placing substantive limitations on official discretion[,]" typically through establishing "substantive predicates" to official decisionmaking and by "mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S. Ct. 864, 74 L. Ed. 2d 675 (1983)).

Section 43-21-301 creates a liberty interest, since in any event, T.M. received the process that she was due, as prescribed by the Fourth Amendment.

It is undisputed that T.M.'s custody and detention constituted a "seizure" within the meaning of the Fourth Amendment. *See C.H., II ex rel. L.H. v. Rankin Cnty. Sch. Dist.*, 415 F. App'x 541, 545-46 (5th Cir. Mar. 4, 2011) (applying standard Fourth Amendment seizure analysis to arrest of minor at school). Unlike the typical due process analysis, in Fourth Amendment seizure cases, the boundaries of the "process that is due" are defined by Fourth Amendment principles, which are "tailored explicitly for the criminal justice system . . . ." *Gerstein v. Pugh*, 420 U.S. 103, 124 n.27, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975).

This could mean that Plaintiff's due process claims are subsumed by the Fourth Amendment. *See C.H., II*, 415 F. App'x at 546 ("Since [plaintiff's] alleged liberty interest was in freedom from unlawful arrest, it is subsumed within his Fourth Amendment false arrest claim . . . ."); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (stating "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims").

Or alternatively, it could mean that Plaintiff's due process claims, while conceptually freestanding, can never extend further than would a Fourth Amendment unreasonable seizure claim. *Pino v. Higgs*, 75 F.3d 1461, 1469 (10th Cir. 1996) (noting that "procedural due process affords Appellant no more protection than her right to be free from unreasonable seizure"); *Ahern v. O'Donnell*, 109 F.3d 809, 818-19 (1st Cir. 1997) ("[T]he Fourth Amendment protection against unreasonable seizures more specifically applies to the complained-of conduct than does

the Due Process Clause, and thus defines what process is due . . . ."); *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984) (explaining that arrest upheld under the Fourth Amendment would preclude due process claim on same alleged conduct). Under either theory, the effect here is the same: Plaintiff's due process claims fail if she is unable to prove that T.M.'s arrest violated the Fourth Amendment.

Critically, the type of state-law preconditions listed in Section 43-21-301 are irrelevant to any Fourth Amendment seizure analysis, as the Supreme Court made clear in *Virginia v. Moore*, 553 U.S. 164, 128 S. Ct. 1598, 170 L. Ed. 2d 559 (2008). In *Moore*, a criminal defendant appealed a trial ruling denying suppression of cocaine discovered incident to an arrest. *Id.* at 168, 128 S. Ct. 1598. The initial arrest was for driving with a suspended license. *Id.*, 128 S. Ct. 1598. But Virginia law expressly prohibited arrest in such circumstances unless (1) the defendant continued the unlawful act; (2) the officer reasonably believed the defendant was likely to disregard the summons or was likely harm himself or others; or (3) prior approval had been granted by order of a court in the applicable jurisdiction. *Moore*, 553 U.S. at 167, 128 S. Ct. 1598 (citing VA. CODE ANN. §§ 19.2-74, 46.2-936). None of these three conditions were met prior to the defendant's arrest, and thus the arrest was illegal under Virginia law. *Id.*, 128 S. Ct. 1598. The defendant argued that the state-law violation made his arrest and subsequent search unreasonable under the Fourth Amendment. *Id.* at 168, 128 S. Ct. 1598.

The Supreme Court unanimously disagreed.[3] *Id.* at 173-76, 128 S. Ct. 1598. It explained that "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.* at 174, 128 S. Ct. 1598. The Fourth

---

[3] Eight Justices joined the majority opinion authored by Justice Scalia. *Id.* at 165, 128 S. Ct. 1598. Justice Ginsberg filed a concurring opinion, agreeing with the Court's conclusion and, to an "extent," its reasoning. *Id.* at 178-80, 128 S. Ct. 1598.

Amendment's probable cause requirement "serves interests that have long been seen as sufficient to justify the seizure." *Id.* at 173, 128 S. Ct. 1598. Thus, an arrest that is supported by probable cause, but that fails to comport with state standards, does not violate the Fourth Amendment. *Id.* at 173-76, 128 S. Ct. 1598.

In light of *Moore*, Plaintiff's arrest-related claims must fail under a Fourth Amendment analysis. At the qualified immunity stage, the Court found that there was probable cause to believe T.M. had committed a simple assault, *see* Memorandum Opinion, at 8 [70], and she has presented no contrary evidence for present purposes. The fact that Mississippi Code Section 43-21-301 imposed *additional* conditions to the seizure of T.M. does not factor into the Fourth Amendment calculus. *Moore*, 553 U.S. at 174, 128 S. Ct. 1598.

Because the initial arrest did not amount to a Fourth Amendment violation, and because the Fourth Amendment represents the maximum process to which T.M. was constitutionally entitled, *see Gerstein*, 420 U.S. at 124 n.27, 95 S. Ct. 854, Plaintiff's due process claims based on state-imposed restrictions are not cognizable. *See C.H., II*, 415 F. App'x at 546 (affirming dismissal of procedural and substantive due process claims based on defendants' alleged failure to comply with Mississippi Youth Court Act during juvenile arrest, as claims were subsumed by the Fourth Amendment). Accordingly, Plaintiff's procedural due process claims are dismissed.

**Unreasonable Search Claims**

Plaintiff additionally alleges that the strip search of T.M. violated her Fourth Amendment right to be free from unreasonable searches. *See* U.S. CONST. amend. IV. Three undisputed facts bear on the Court's analysis of her claims. At the time of the strip search, no corrections officer suspected that T.M. possessed weapons, drugs, or other contraband. Further, the strip search was a visual "body-cavity" search, similar to those upheld by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 576-77, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). T.M. was required to "remove all

of . . . her clothing, bend over, spread the buttocks, and display the anal cavity" to a female corrections officer, *id.*, 99 S. Ct. 1861, but there is no evidence that she was physically contacted in any way. Finally, T.M. was admitted to the detention center's general population following the search.

To determine whether the search was reasonable, and thus constitutionally permissible, the Court must balance "the need for a particular search against the invasion of personal rights that the search entails[,]" considering "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Wolfish*, 441 U.S. at 559, 99 S. Ct. 1861 (numerous citations omitted). In striking this balance, the Supreme Court has utilized various different standards or tests, depending on the factual scenario presented in each case. *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619, 109 S. Ct. 1402, 103 L. Ed. 2d 639 (1989).

The search of T.M. lies at the intersection of two more recent Supreme Court cases, *Safford Unified School District No. 1 v. Redding*, 557 U.S. 364, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009), and *Florence v. Board of Chosen Freeholders of County of Burlington*, --- U.S. ---, 132 S. Ct. 1510, 182 L. Ed. 2d 566 (2012). In *Safford*, the Supreme Court held that a school strip search of a thirteen-year-old girl was unreasonable in violation of the Fourth Amendment. 557 U.S. at 375-77, 129 S. Ct. 2633. It explained that a school search is only justified if the school administrator has "reasonable suspicion" that the student possesses contraband, and only if the search is "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 375, 129 S. Ct. 2633. Although a preliminary search of the plaintiff's bag and outer clothing was reasonable in view of suspicion that she was distributing pills, a subsequent

partial strip search was held unreasonable because the "content of the suspicion failed to match the degree of intrusion." *Id.* at 371-77, 129 S. Ct. 2633.

Three years later, in *Florence*, the Supreme Court held that all arrestees committed to a detention facility's general population "may be required to undergo a close visual inspection while undressed[,]" even in the absence of reasonable suspicion of contraband. 132 S. Ct. at 1513, 182 L. Ed. 2d 566. Out of deference to corrections officers and in light of a host of security risks and other difficulties in operating detention centers, the Court explained that a regulation "impinging an inmate's constitutional rights must be upheld 'if it is reasonably related to penological interests.'" *Id.* at 1515-16, 182 L. Ed. 2d 566 (quoting *Turner v. Safley*, 48 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987)). Because there was not "substantial evidence" that the corrections officers' "response to the situation [wa]s exaggerated[,]" the Supreme Court upheld the body-cavity searches as constitutional. *Id.* at 1518, 182 L. Ed. 2d 566 (quoting *Block v. Rutherford*, 468 U.S. 576, 584-85, 104 S. Ct. 3227 (1984)). Neither case is directly on point. *Safford* involved a juvenile, but not at a detention center; *Florence* involved a detention center, but not a juvenile.

Only three circuit courts have considered this precise issue, and the standards applied have been less than uniform. Prior to *Safford* and *Florence*, the Second and Eighth Circuits addressed strip searches upon intake into juvenile detention centers, applying the "special needs" balancing test from *Board of Education v. Earls*, 536 U.S. 822, 829, 122 S. Ct. 2559, 153 L. Ed. 2d 735 (2002). *N.G. v. Connecticut*, 382 F.3d 225, 235-36 (2d Cir. 2004); *Smook v. Minnehaha Cnty.*, 457 F.3d 806, 810 (8th Cir. 2006). Just last year, with the benefit of *Safford* and *Florence*, the Third Circuit concluded that the "penological interests" test used in *Florence* is appropriate

in the juvenile detention center setting. *J.B. ex rel. Benjamin v. Fassnacht*, 801 F.3d 336, 341-47 (3d Cir. 2015).[4]

Plaintiff argues that Fourth Amendment protections are calibrated differently for juveniles, and urges *Safford*'s "reasonable suspicion" standard, or alternately the balancing test used by the Second and Eighth Circuits. Defendants ask the Court to follow the Third Circuit and apply *Florence* to this juvenile detention setting.

In considering the impact of *Safford*, the Court recognizes that the primary concern in this field is with the setting of the search rather than with the age of the plaintiff. The Supreme Court in *Florence* narrowed its holding to searches of detainees being admitted to general population, but did not articulate a limitation for the age of the arrestee. 132 S. Ct. at 1515, 182 L. Ed. 2d 566. Similarly, the "reasonable suspicion" standard in *Safford* was justified by and limited to the school setting; it did not concern searches of juveniles in other contexts. 557 U.S. at 369-77, 129 S. Ct. 2633; *see also Fassnacht*, 801 F.3d at 347 ("[T]he Supreme Court carefully delineated its holding, limiting it to strip searches of minors *specifically* in the school setting.").

Indeed, "reasonable suspicion" is not a concept unique to searches of juvenile suspects. For example, an officer must have "reasonable suspicion" to search an adult for weapons pursuant to an investigatory stop. *United States v. Reyes*, 349 F.3d 219, 224 (5th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). But as *Florence* teaches, once the adult is arrested for a crime and admitted to general population, suspicion is no longer required, even to conduct a full strip search. 132 S. Ct. at 1513, 182 L. Ed. 2d 566.

---

[4] A decades-old Eleventh Circuit case, cited by Plaintiff and applying a "reasonable suspicion" standard, is factually inapplicable. *Justice v. City of Peachtree City*, 961 F.2d 188, 189-90, 193 (11th Cir. 1992). There, a fourteen-year old girl was strip-searched at a police station before release back to her mother. *Id.* Here, as in *Florence*, *Fassnacht*, *Smook*, and *N.G.*, the search was part of the admissions process into the detention facility.

Nothing suggests that this contextualized inquiry should operate differently when the detainee is a juvenile. *See Fassnacht*, 801 F.3d at 343-44 ("There is no easy way to distinguish between juvenile and adult detainees . . . . [A]ny individualized, reasonable suspicion inquiry falters in juvenile detention centers for the same reasons it does so in adult facilities."). Once T.M. was arrested with probable cause and transported to the detention center, her legitimate expectation of privacy was circumscribed, and *Safford*'s "reasonable suspicion" requirement no longer applied. *Id.* at 344.

The Court next considers the "special needs" balancing test, utilized by the Second and Eighth Circuits to evaluate juvenile-detention strip searches. Instead of deferring to the facilities' "legitimate penological interests" as did the Supreme Court in *Florence*, those courts conducted "a fact-specific balancing of the intrusion . . . against the promotion of legitimate governmental interests." *N.G.*, 382 F.3d at 230-31, 236 (quoting *Earls*, 536 U.S. at 829, 122 S. Ct. 2559); *Smook*, 457 F.3d at 810 (internal citation and quotation omitted).[5]

In eschewing the "penological interests" standard in favor of the balancing test, the Second Circuit (later followed by the Eighth Circuit) relied on two justifications no longer valid after *Florence*. *N.G.*, 382 F.3d at 235-36. The Second Circuit first noted that the "penological interests" standard had only been applied in the prison context, not to the juvenile detention center setting. *Id.* at 235 (citing *Turner*, 482 U.S. at 89, 107 S. Ct. 2254). Further, the test had never been used for assessing claimed protection "*from* state action such as a strip search," but only for regulations interfering with the "assertion of affirmative rights . . . ." *Id.* at 235-36 (citing *Turner*, 482 U.S. at 81-82, 107 S. Ct. 2254). *Florence* made clear, however, that deference to "penological interests" broadly applies "to prisons and *other detention facilities*[,]"

---

[5] Of particular note, both Courts upheld full or partial strip searches conducted upon initial intake into the detention centers. *Smook*, 457 F.3d at 811-13; *N.G.*, 382 F.3d at 236-37.

and that it imports directly into the strip-search context. 132 S. Ct. at 1513, 1515-16, 182 L. Ed. 2d 566 (emphasis added). It follows, then, that the search of T.M. at the juvenile detention center is appropriately evaluated through the framework set forth in *Florence* for detention centers.

*Florence*'s prescribed deference to the detention center's "penological interests" is unchanged by a justified sensitivity to the privacy rights of minors. Undoubtedly, a juvenile's young age only exacerbates the already-intrusive nature of a strip search, as "adolescent vulnerability intensifies the patent intrusiveness of the exposure." *Safford*, 557 U.S. at 374, 129 S. Ct. 2633; *see also Fassnacht*, 801 F.3d at 341 (internal citation omitted) ("[C]hildren are especially susceptible to possible traumas from strip searches.").

But set opposite this increased intrusion is the detention facility's elevated interest in discovering contraband. *Id.* at 342-43; *N.G.*, 382 F.3d at 236. As the Third Circuit noted, institutional security concerns present in *Florence* equally exist in the juvenile setting. *Fassnacht*, 801 F.3d at 342-43. Minors may "represent the same risks to themselves, staff, and other detainees as adults [and] may carry lice or communicable diseases, possess signs of gang membership, and attempt to smuggle in contraband." *Id.* at 342. These concerns common to both adult and juvenile facilities create an "enhanced risk when housing minors" because the government acts "*in loco parentis*" while the minor is detained. *Id.* at 343; *see also N.G.*, 382 F.3d at 236.

For all of these reasons, the Court follows the Third Circuit's lead and holds that *Florence* applies to strip searches at juvenile detention centers. *Fassnacht*, 801 F.3d at 341-47. Thus, "[d]eference must be given to the officials in charge . . . unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." *Florence*, 132 at 1518,

182 L. Ed. 2d 566 (quoting *Block*, 468 U.S. at 584-85, 104 S. Ct. 3227). Plaintiff has presented no such evidence here. Dismissal is appropriate on her unreasonable search claims.

*Conclusion*

Plaintiff has failed to show that T.M.'s arrest violated the Fourteenth Amendment's Due Process Clause, or that the strip search violated the Fourth Amendment's reasonableness standard. Therefore, the entity Defendants' motions for summary judgment [97], [99], [106], [108] are GRANTED.

Tupelo and Tupelo Public School District moved for summary judgment as to all claims against them. Thus any claims arguably listed in the complaint, but not urged in response to summary judgment, are hereby abandoned. *See Sanders v. Sailormen, Inc.*, No. 3:10-CV-606-CWR, 2012 WL 663021, at *3 (S.D. Miss. Feb. 28, 2012). Tupelo and the Tupelo Public School District are DISMISSED from this lawsuit.[6]

Not equally certain, however, is whether Lee County also moved for complete summary judgment. Though it filed two dismissal motions [97], [99], both were for partial summary judgment. Given that Plaintiff's complaint is somewhat vague, the Court requires Plaintiff to show cause within twelve days as to whether there are any remaining claims against Lee County, not argued in response to summary judgment, and not addressed in this opinion. A separate order to this effect shall issue this day.

SO ORDERED, this the 9th day of March, 2016.

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**

---

[6] Tupelo and Tupelo Public School District filed motions for partial dismissal for failure to state a claim [80], [84]. Given their summary dismissal here, the motions to dismiss are moot.